07-0355-cv
Henry v. Champlain Enterprises

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: October 21, 2008          Decided: June 19, 2009)

Docket No. 07-0355-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH HENRY and MICHAEL MALINKY,

             Plaintiffs-Appellants,

                  v.

U.S. TRUST COMPANY OF CALIFORNIA, N.A.,

             Defendant-Appellee,

CHAMPLAIN ENTERPRISES, INC., doing business as COMMUTAIR, ANTHONY
VON ELBE, JOHN ARTHUR SULLIVAN JR., ERNEST JAMES DROLLETTE,
ANDREW PRICE, WILLIAM L. OWENS, CHAMPLAIN AIR, INC.,
             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:  FEINBERG, WINTER, and POOLER, Circuit Judges.

Appeal from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, Judge), dismissing appellants' complaint of alleged violations of the Employee Retirement Income Security Act. The court held that appellants suffered no damages even if violations did occur. We hold that when an Employee Stock Ownership Plan incurs debt to finance a purchase of shares of stock and then later sells the shares in exchange for cancellation of some of that debt, the

debt cancellation in the second transaction should not be construed as having reduced the purchase price paid in the first transaction.  We therefore vacate and remand to the district court.

TERENCE J. DEVINE (Stanley H. Shayne, Shayne Nichols, LLC, Columbus, Ohio; Gary D. Greenwald, Keller Rohrback, PLC, Phoenix, Arizona, on the brief), DeGraff, Foy, Kunz & Devine, LLP, Albany, New York, for Plaintiffs-Appellants.

EDWARD A. SCALLET (Lars C. Golumbic and Dipal A. Shah, Groom Law Group Chartered, Washington, D.C.; Robert N. Eccles, Jonathan D. Hacker, and Schan S. Duff, O'Melveny & Myers, LLP, Washington, D.C., on the brief), Groom Law Group Chartered, Washington, D.C., for Defendant-Appellee.

WINTER, Circuit Judge:

Joseph Henry and Michael Malinky appeal from Judge Hurd's dismissal of their complaint after a remand from this court, Henry v. Champlain Enterprises, Inc., 445 F.3d 610 (2d Cir. 2006) ("Henry III"). The complaint alleged violations of the Employee Retirement Income Security Act ("ERISA").  After the remand, the district court held that appellants suffered no damages even if ERISA violations occurred.  Henry v. Champlain Enters., Inc., 468 F. Supp. 2d 368, 373 (N.D.N.Y. 2007) (mem.) ("Henry IV").  The principal issue is whether the district court properly concluded that an award of damages to appellants would constitute a

2

windfall.  For the reasons set forth below, we disagree and vacate the judgment.

BACKGROUND

We assume familiarity with the facts and procedural history as set forth in our prior decision, see Henry III, 445 F.3d at 613-17, and recite only those relevant to the present issues.

CommutAir is a corporation that provides regional commuter airline services.  Appellants are participants in CommutAir's Employee Stock Ownership Plan ("ESOP").  In 1994, the ESOP purchased 540,000 shares of CommutAir convertible preferred stock from CommutAir's three owners -- Anthony von Elbe, John Arthur Sullivan, Jr., and Ernest James Drollette ("the sellers") -- at a total price of $60 million.  The ESOP financed this purchase by paying $9 million in cash, for which the ESOP issued a promissory note to CommutAir, and by issuing a total of $51 million in promissory notes to the three sellers.

Appellee U.S. Trust was the ESOP's trustee during this transaction.

In 1999, CommutAir settled a dispute with the Internal Revenue Service over CommutAir's deductions for its contributions to the ESOP.  The settlement was based on an assumption that the fair market value of the purchased stock, at the time of purchase, was only $51 million rather than $60

3

million.  This settlement triggered Section 5.7 of the 1994 stock purchase agreement, which provided, _inter alia_, that in the event of a "final determination" that the shares' purchase price exceeded the purchased shares' fair market value as of the date of the sale, the sellers would make up the difference (plus interest) either in cash or in additional shares "valued in accordance with their actual fair market value" at the time of the 1994 purchase and sale.[1]  Accordingly, in 2004 the sellers gave the ESOP an additional 191,000 shares.

Meanwhile, in November 2001, appellants had brought the present action against U.S. Trust and others, alleging in pertinent part that the 1994 stock purchase had violated Section 406 of ERISA, which generally prohibits an employee plan's fiduciaries from causing the plan to engage in transactions with a "party in interest," including purchases of the employer's securities.  29 U.S.C. § 1106(a).  Section 408 of ERISA provides an exception to this general prohibition,

---

[1]Section 5.7 of the agreement reads as follows:

> In the event of a final determination by the Internal Revenue Service, the Department of Labor, a court of competent jurisdiction or otherwise that the fair market value of the shares of ESOP [c]onvertible [p]referred [s]tock as of the [c]losing is less than the [p]urchase [p]rice, then the [s]ellers, jointly and severally, shall pay to the [t]rust an amount equal to the difference between the [p]urchase [p]rice and said fair market value for the such shares of ESOP [c]onvertible [p]referred [s]tock, plus interest at a reasonable rate [from] the date of [c]losing to the date of such payment.  Such payment may be made either in cash, or in the form of shares, valued in accordance with their actual fair market value as of the [c]losing.

4

allowing a plan in certain circumstances to purchase the employer's stock if the plan receives "adequate consideration," which in this case would have been the "fair market value of the asset as determined in good faith by the trustee." 29 U.S.C. §§ 1002(18), 1108(e)(1).

After a bench trial, the district court held that Section 406 applied to the 1994 agreement but the Section 408 exception did not, because U.S. Trust had failed to demonstrate that it had undertaken an "adequate, good-faith" investigation of the stock's value. Henry v. Champlain Enters., Inc., 334 F. Supp. 2d 252, 268-70, 274 (N.D.N.Y. 2004) ("Henry II"). Finding that the fair market value of the stock that the ESOP received had not been $60 million, but only $52.25 million, the district court awarded appellants $7.75 million in damages against U.S. Trust. Id. at 274-75. A subsequent amendment to the judgment added awards of prejudgment interest and of attorneys fees and expenses. Henry IV, 468 F. Supp. 2d at 370-71.

U.S. Trust appealed. In April 2006, we vacated the district court's judgment and award of damages and remanded for the district court to: (i) identify the specific errors, if any, that occurred in the $60 million valuation of the CommutAir stock; (ii) determine whether a prudent fiduciary would have detected those errors under the circumstances prevailing at the time of the 1994 transaction; (iii) articulate reasons for its specific award of prejudgment

5

interest; and (iv) if the district court did award damages on remand, explain why those damages would not result in a windfall to the ESOP. Henry III, 445 F.3d at 621, 623-24. In discussing the windfall issue, we specifically called attention to the 2004 grant of 191,000 extra shares to the ESOP. Id. at 624.

In February 2006, while the first appeal was pending, the ESOP sold all of its CommutAir stock to CommutAir in exchange for CommutAir's cancellation of the outstanding $9 million promissory note and for CommutAir's owners' cancellation of the balance on the $51 million in promissory notes. Although this transaction occurred after the first appeal was argued and before our decision was issued, the parties never informed us of this transaction.

The 2006 sale/debt-forgiveness transaction did not purport to be a settlement of any issue relevant to this appeal. There is an indication in the record that the CommutAir securities may have been worthless in 2006, but nothing in the record explains the reason for the 2006 transaction. On the record before us, the 2006 transaction was independent of earlier transactions and was desired by the parties to it, which did not include U.S. Trust, in light of their economic circumstances.

On remand, the district court dismissed all claims against U.S. Trust on the ground that any award of damages would be a

6

prohibited windfall to the ESOP.  Henry IV, 468 F. Supp. 2d at 372-73.  It concluded that addressing the other issues mentioned in our remand was therefore unnecessary.  Id. at 373.

The present appeal ensued.

DISCUSSION

When this case was first before us, we noted that "[t]he aim of ERISA is 'to make the plaintiffs whole, but not to give them a windfall.'"  Henry III, 445 F.3d at 624 (quoting Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000)). We also noted that in light of the provision of extra shares to the ESOP in 2004, inter alia, the district court should decide on remand whether an award of damages against U.S. Trust would constitute a windfall.  Id. at 623-24.

On remand, the district court addressed the windfall issue, but not with reference to the 2004 provision of extra shares.  Instead, it reasoned that because the February 2006 sale of the ESOP's CommutAir shares to CommutAir involved cancellation of approximately $14.5 million of the ESOP's debt,[2] the ESOP ultimately paid only $45.5 million for its CommutAir shares.  Henry IV, 468 F. Supp. 2d at 372.  The district court reached that figure by subtracting the $14.5 million in loans forgiven in the 2006 transaction from the $60

---

[2]The amount was based on $9 million owed to CommutAir and the approximately $5.5 million still owed to the owners of CommutAir -- von Elbe, Sullivan, and Drollette.

7

million purchase price in the 1994 transaction.[3] Id. The district court then concluded that because $45.5 million was less than $51 million, which was the lowest estimate of the value that the purchased CommutAir shares had at the time of the 1994 purchase, "any award of damages would constitute a windfall." Id.

The district court assumed that when a purchaser of stock incurs debt to finance the purchase and then later sells the stock in exchange for cancellation of some of that debt, the debt cancellation in the second transaction should, for purposes of ERISA, be construed as having reduced, post facto, the purchase price in the first transaction, and thus to have reduced any loss for which damages should be awarded. We disagree.

Neither the district court nor appellee has offered any justification for such an assumption, which we regard as

---

[3]The parties disagree over which figures the district court should have used in calculating the supposed effect of the 2006 transaction on the 1994 purchase price. Appellants argue that the district court should have arrived at a purchase price of $54.5 million, rather than $45.5 million. Appellee argues that the district court's calculation was correct. Although the details of these dueling calculations are immaterial to the disposition of this appeal, in order to avoid any inference that might arise on remand from our silence, we note that we disagree with appellants. Appellants tally up the ESOP's costs as follows: $51 million in promissory notes to von Elbe, Sullivan, and Drollette; $9 million in cash to von Elbe, Sullivan, and Drollette; and a $9 million promissory note to CommutAir, for a total of $69 million. What appellants overlook is that if the $9 million promissory note to CommutAir is treated as part of the 1994 transaction, then what the ESOP received was not merely 540,000 shares of CommutAir convertible preferred stock, but rather those 540,000 shares plus $9 million in cash from CommutAir. The ESOP did not give CommutAir a $9 million promissory note in exchange for nothing. It gave that note in exchange for cash. Thus, in the corrected version of appellants' calculation, the ESOP paid $69 million for $9 million in cash plus 540,000 shares. Netting out the $9 million in cash, the price that the ESOP paid for the shares alone was $60 million.

8

incorrect.[4]  If an investor pays $100 for 20 shares of stock and later sells those shares back to the original seller for $25, the result is not that the investor paid only $75 for the shares.  Rather, the result is that the investor lost $75 on that investment.

Although the transactions in the present case involved payment chiefly in the form of debt obligations and debt forgiveness, rather than cash, the fundamental logic remains the same.  If the hypothetical investor above paid for the 20 shares with $100 of IOU's and later resold the shares to the original seller for a cancellation of $25 of IOU's, no one would deem the resale to have altered the original price so that no loss was incurred.  So too, when the ESOP purchased CommutAir shares in 1994 for $60 million, financed by incurring debt, and then in 2006 sold those shares (plus additional shares received in 2004) in exchange for forgiveness of $14.5 million in debt, the result was not a decrease in the price paid in 1994, but rather the realization of a substantial loss

---

[4]Appellee also suggests that the $9 million promissory note to CommutAir should not be included in any calculation of the ESOP's losses because, as a result of the 2006 sale that involved canceling that debt, the ESOP never expended any earnings to repay that loan. Apart from one district court case that merely notes that an employer's ESOP contributions are compensation, not a gratuity, Reich v. Valley Nat'l Bank of Arizona, 837 F. Supp. 1259, 1287 (S.D.N.Y. 1993), appellee offers no legal authority for its contention that only repayments of debt, and not the assumption of indebtedness itself, constitute a loss.  Appellee nevertheless contends that the proper "economic analysis" of these transactions requires such an approach. This contention overlooks the obvious fact that the assumption of indebtedness has immediate legal and economic consequences even before the borrower begins to repay the debt.  For example, the borrower's plans for the future are now constrained by the obligation to commit future income streams to repaying the loan, and the borrower's ability to obtain future loans at a low rate decreases, because the borrower is now a greater credit risk.

on that investment.

We, therefore, overturn the conclusion that, on the basis of the 2006 transaction, the ESOP paid only $45.5 million for the CommutAir shares that it acquired.  The 2006 transaction had no effect on the 1994 transaction's purchase price, which, on the record before us, was $60 million.  See supra Note 2.

The issue posed, inter alia, in our Henry III remand, whether an award of damages against U.S. Trust would result in an impermissible windfall, still remains impossible for us to determine.  Whether the ESOP ultimately was overcharged depends not only on the purchased shares' price, but also on their value.  How much the total number of shares that the ESOP acquired in 1994 and 2004 was worth at the time of the 1994 transaction is a question of fact that the record before us does not answer.  We therefore remand again for the district court to consider this issue, if the district court determines that appellants are entitled to recover damages from U.S. Trust.

As noted, supra, the district court concluded that the 2006 transaction mooted the issue of the appropriateness of awarding costs against appellants and the other issues that we earlier directed it to consider on remand.  Henry IV, 468 F. Supp. 2d at 373.  Our decision of course restores the need to resolve these issues.

Appellants raise an additional argument that the ESOP's

10

interest payments were excessive because its loan amortization schedule was based on a total share purchase price of $60 million rather than on a lesser amount. As we have just noted, what is at issue in this case is not whether the ESOP paid less than $60 million for the CommutAir shares that it received in 1994 and 2004, but rather how much those acquired shares were worth at the time of the 1994 transaction. If those shares were worth less than $60 million, and if damages are awarded against U.S. Trust, then the interest overpayment argument may perhaps be relevant to the district court's damages calculation. It is not, however, an issue for us to address in this appeal.

CONCLUSION

For the foregoing reasons the judgment of the district court is vacated, and we remand to the district court for further proceedings consistent with this opinion and our opinion in Henry III.